# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO NEPOMUCENO, | Case No. 13cv633 BTM(BGS) |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS** |
| v. | |
| CHEROKEE MEDICAL SERVICES, LLC, | |
| Defendant. | |

Defendant Cherokee Medical Services, LLC ("CMS" or "Defendant") has filed a motion to dismiss Plaintiff's Complaint. For the reasons discussed below, Defendant's motion is **DENIED**.

## I. BACKGROUND

On March 18, 2013, Plaintiff Roberto Nepomuceno ("Plaintiff") commenced this action. Plaintiff alleges that he worked for six years as a Pharmacy Technician for CMS at the Balboa Naval Hospital. (Compl. ¶ 5.) Plaintiff identifies his supervisor as CMS Human Resources Manager, Sy Simmons. (Id.)

In late 2011, Plaintiff was informed that his Common Access Card ("CAC") would expire by December 2011, and that Plaintiff had to obtain a new security clearance to renew his CAC. (Compl. ¶ 5.) CMS told Plaintiff that

CMS would process Plaintiff's new security clearance. (Id.) On or about November 22, 2011, Mr. Simmons told Plaintiff that there was a problem with the security clearance due to the fact that Plaintiff was a dual citizen of the United States and the Philippines, where he was born. (Compl. ¶ 6.)

Plaintiff took immediate steps to remedy the security clearance issue. Based on information he received, Plaintiff understood that if he surrendered his passport and signed a memorandum stating that he was willing to renounce his dual citizenship if asked to do so, he could obtain security clearance. (Compl. ¶ 7.) Therefore, on or about November 2, 2011, Plaintiff sent his Phillipines passport, a copy of his U.S. Naturalization Certificate, and a signed memorandum to Donna Nowak, Credential Manager with CMS. (Compl. ¶ 8.) Meanwhile, Plaintiff kept Mr. Simmons apprised regarding his efforts to obtain the security clearance. (Id.)

On December 10, 2011, when Plaintiff arrived to work, he noticed he was not on the schedule. (Compl. ¶ 8.) Plaintiff's on-site federal GS supervisor told him that the paperwork was still being processed and that he should go home and come back to work on December 12, 2011. (Id. at ¶ 9.) On December 12, 2011, Plaintiff called his Federal GS supervisor, who told him that CMS had already replaced him. (Id.) Plaintiff then called Mr. Simmons, who explained that CMS had already replaced Plaintiff by the time they found out about his efforts to rectify the security issue. (Id.)

Plaintiff alleges that CMS never submitted the proper paperwork to obtain security clearance for Plaintiff because of Plaintiff's dual citizenship and the fact that he was born in the Phillipines. (Compl. ¶ 12.) Plaintiff alleges that CMS's actions were substantially motivated by Plaintiff's national origin. (Id.)

Plaintiff also alleges that during his employment with CMS, one of his federal supervisors threatened to fire him on at least two occasions because he was speaking Tagalog in the workplace. (Compl. ¶ 11.) Plaintiff informed

Mr. Simmons of these incidents, but Mr. Simmons never did anything in response. (Id.)

Plaintiff asserts the following claims: (1) continuing race, national origin, and/or ancestry discrimination in violation of Title VII, 42 U.S.C. § 2000e, et seq.; (2) continuing race, ancestry, national origin and/or color discrimination in violation of Cal. Gov't Code § 12940 et seq.; and (3) failure to prevent unlawful harassment in violation of Cal. Gov't Code § 12940 et seq.

## II. DISCUSSION

CMS moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6). As discussed below, the Court is not persuaded by CMS's arguments in favor of dismissal.

A. Sovereign Immunity

CMS contends that the Court lacks jurisdiction over the Title VII and Fair Employment Housing Act ("FEHA") claims because CMS is an arm of the Cherokee Nation tribe and is therefore entitled to tribal sovereign immunity.

Tribal sovereign immunity extends to business activities of the tribe when the business entity functions as "an arm of the tribe." Allen v. Gold Country Casino, 464 F.3d 1044, 1046-47 (9th Cir. 2006). In determining whether the business entity functions as an arm of the tribe, courts look to the formation of the entity – i.e., whether it was formed pursuant to a trial ordinance, the ownership and control of the entity, and whether the economic benefits produced by the business inure to the tribe's benefit. Id.; see also Cook v. Avi Casino Enterprises, Inc., 548 F.3d 718, 725-26 (9th Cir. 2008).

The Cherokee Nation is a federally recognized tribe.[1] However, CMS's

---

[1] See Indian Entities Recognized and Eligible to Receive Services from the Bureau of Indian Affairs, 77 Fed. Reg. 47,868, 47,869 (Aug. 10, 2012).

contention that it is an "arm of the Cherokee Nation" is not supported by the record. The only document that CMS presents in support of its argument is Amended and Restated Articles of Incorporation for CMS. (Ex. C to Decl. of Brandy L. Shores.) According to the Amended and Restated Articles of Incorporation dated March 10, 2013, "The company's sole member is Cherokee Nation Business, LLC, a single-member Cherokee Nation limited liability company wholly owned by the Cherokee Nation." Even though the Court can take judicial notice of the Amended and Restated Articles of Incorporation, the Court cannot take judicial notice for purposes of establishing as true the facts stated therein. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999) (explaining that when considering public documents required to be filed with the SEC in connection with a motion to dismiss, a court may take judicial notice for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents); see also Allstate Ins. Co. v. Estate of Robert M. Levesque, 2010 WL 2978037, at * 2 (M.D. Fla. July 19, 2010) (taking judicial notice of documents on file with Division of Corporations for limited purpose of noticing what is stated in the documents, not to establish as true the facts stated therein). Accordingly, the Court cannot rely on the Amended and Restated Articles of Incorporation to conclude that CMS is wholly owned by the Cherokee Nation.[2]

CMS has not come forward with any evidence of how CMS was formed, who owns CMS, how CMS is managed, and where profits from the business go. Therefore, CMS has not established that it is an arm of the Cherokee Nation entitled to tribal sovereign immunity from suit, and the Court denies CMS's motion to dismiss for lack of subject matter jurisdiction. CMS may reassert tribal sovereign immunity in a motion for summary judgment.

---

[2] Plaintiff objected to the exhibits filed with CMS's Reply and moved to strike the exhibits. The Court allowed Plaintiff to file a sur-reply addressing the newly filed exhibits. Therefore, Plaintiff's motion to strike is denied.

However, any such motion should not be filed until Plaintiff has had the opportunity to conduct adequate discovery on the issue.

B. <u>Title VII Claim</u>

CMS argues that it is not an "employer" as defined by 42 U.S.C. § 2000e. Under 42 U.S.C. § 2000e(b), the term "employer" does not include "an Indian tribe." However, whether CMS qualifies as "an Indian tribe" for purposes of this exemption depends on whether CMS functions as an arm of the Cherokee Nation. <u>Pink v. Modoc Indian Health Project, Inc.</u>, 157 F.3d 1185, 1188 (9th Cir. 1998) (holding that corporation served as an arm of the sovereign tribes and therefore fell within the scope of Title VII's Indian Tribe exemption). As already discussed, CMS has not established that it functions as an arm of the Cherokee Nation. Therefore, CMS cannot prevail on its argument that it is not an "employer."

CMS also argues that Plaintiff filed this action beyond the 90-day period set forth in 42 U.S.C. § 2000e-5(f)(1). Under § 2000e-5(f)(1), a claimant is required to bring a civil action within 90 days after the EEOC gives notice that it has dismissed his or her claim. The requirement for filing suit within 90 days constitutes a statute of limitations. <u>Edwards v. Occidental Chem. Corp.</u>, 892 F.2d 1442, 1445 (9th Cir. 1990).

Based on the evidence before the Court, the Court concludes that this action was filed within the 90-day period. Plaintiff filed two separate charges with the EEOC. The first charge alleged retaliation and termination in bad faith. (Ex. D to Simmons Decl.) A Notice of Right to Sue was issued on the first charge on September 7, 2012. (Ex. E to Simmons Decl.) Plaintiff's second charge alleged national origin discrimination. (Ex. 4 to Nepomuceno Decl.) A Notice of Right to Sue was issued on the second charge on December 14, 2012. (Ex. 5 to Nepomuceno Decl.)

The Ninth Circuit has held that the 90-day period begins running when the right-to-sue letter is delivered to the claimant's home, not when the claimant actually reads the letter. Scholar v. Pacific Bell, 963 F.2d 264, 267 (9th Cir. 1992). When there is no evidence regarding when the right-to-sue letter was delivered, there is a rebuttable presumption that the letter was mailed on its issuance date and was received three days later. Payan v. Aramark Mgmt. Serv. Ltd. P'ship, 495 F.3d 1119, 1125 (9th Cir. 2007).

Plaintiff did not present any evidence of when the Notice of Right to Sue was delivered to his home. Therefore, the Court presumes that the letter was mailed on December 14, 2012, and was received three days later, on December 17, 2012. Ninety days after December 17, 2012 would have been March 17, 2013. However, because March 17, 2013 was a Sunday, the ninety-day period was extended to Monday, March 18, 2013. Payan, 495 F.3d at 1125; Fed. R. Civ. P. 6(a)(1)(C). Plaintiff filed his Complaint on March 18, 2013. Therefore, it appears that this action is timely.

C. FEHA Claim

CMS contends that it is not an "employer" for purposes of Plaintiff's FEHA claim. According to CMS, the Government, not CMS, is Plaintiff's employer because the Government dictates the work, work schedule, rate of pay, and qualifications necessary to perform in the position.

In determining whether a defendant is an employer, courts consider the "totality of circumstances" that "reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of work duties." Vernon v. State, 116 Cal. App. 4th 114, 124 (2004). An employee may have joint employers where the employee works for an employment agency that assigns the employee to work on the premises of a client company, and both the employment agency and the client

company have the right to exercise certain control over the employee. Mathieu v. Norrel Corp., 115 Cal. App. 4th 1174, 1183-84 (2004).

"There is no magic formula for determining whether an organization is a joint employer. Rather, the court must analyze 'myriad facts surrounding the employment relationship in question'." Vernon, 116 Cal. App. 4th at 125 (quoting Choe-Rively v. Vietnam Veterans of America, 135 F. Supp. 2d 462, 470 (D. Del. 2001)). "[T]he precise contours of an employment relationship can only be established by a careful factual inquiry." Id. (quoting Graves v. Lowery, 117 F.3d 723, 729 (3d Cir. 1997)).

Due to the factually intense nature of the inquiry, the Court cannot and should not make the determination of whether CMS qualifies as an "employer" on a motion to dismiss. CMS is free to raise this argument in a motion for summary judgment.[3]

D. <u>Service of Process</u>

Although unclear, it appears that CMS takes the position that the Complaint should be dismissed for insufficient service of process. Fed. R. Civ. P 12(b)(5). CMS states that the Complaint was served on "Int. Corporate Solutions, Inc.," even though the registered agent for process for CMS in California is "C T Corporation System." However, it appears that *at the time the Complaint was filed*, CMS's registered agent was "International Corporate Solutions, Inc." (Ex. 1 to Zielinski Decl.) Therefore, it appears that service of process was proper.

---

[3] CMS makes an additional argument that FEHA is preempted to the extent it does not exempt Indian tribes. However, the Court need not reach this argument because CMS has not established that it functions as an arm of the Cherokee Nation. Moreover, if CMS could establish that it functions as an arm of the Cherokee Nation, CMS would be entitled to tribal sovereign immunity with respect to the FEHA claims, regardless of whether FEHA specifically exempts Indian tribes. See, e.g., Riggs v. Bishop Paiute Gaming Corp., 2003 WL 205183 (Cal. Ct. App. Jan. 31, 2003) (holding that tribal-owned gaming corporation was immune from suit alleging sexual harassment and discrimination).

### III. CONCLUSION

For the reasons discussed above, CMS's motion to dismiss (Doc. No. 4) is **DENIED**. CMS shall answer the Complaint within 15 days of the entry of this Order.

**IT IS SO ORDERED.**

DATED: October 16, 2013

/s/ Barry Ted Moskowitz
BARRY TED MOSKOWITZ, Chief Judge
United States District Court